### LONSDALE GRAIN CO. v. JOHNSTON.

No. 8422—Opinion Filed April 20, 1920.

(Syllabus by the Court.)

**1. Sales—Construction of Contract—Sale of Grain—Customs and Usages.**

Where an oral contract is made in Oklahoma, between a broker and grain dealer for the sale and delivery of wheat, and the terms, conditions, and place of delivery are not mentioned in the verbal agreement, because such terms, etc., are understood by reason of former transactions of the same kind between the same parties, and it is also understood between the parties that the present sale is made under the same terms, etc., as former transactions, and where such former transactions were made subject to and understood by the parties to be governed by the rules and customs of the Oklahoma Grain Dealers' Association, the present agreement in such case is an Oklahoma contract and governed by the rules and customs of the Oklahoma Grain Dealers' Association.

**2. Appeal and Error—Verdict—Evidence.**

Where the facts in a case are properly submitted to a jury under a correct theory of the law from the court and the evidence reasonably tends to support the verdict, it will not be disturbed on appeal.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by the Lonsdale Grain Company against W. B. Johnston for breach of contract. Judgment for defendant, and plaintiff brings error. Affirmed.

Morrison, Nugent & Wylder and Parker & Simons, for plaintiff in error.

Chas. West, for defendant in error.

HARRISON, J. The object of this suit was to recover damages alleged to have been caused by the breach of a contract to deliver 5,000 bushels of wheat, sold by W. B. Johnston, defendant below, to the Lonsdale Grain Company, plaintiff below. The Lonsdale Grain Company is a corporation, of Kansas City, Missouri; W. B. Johnston is a grain dealer, of Enid, Oklahoma. On July 24, 1917, J. R. Bailey, the Lonsdale Grain Company's broker, was in Mr. Johnston's office in Enid, Oklahoma, and contracted with Johnston for the delivery to the Lonsdale

Grain Company, f. o. b. New Orleans, of 5,000 bushels of No. 2 wheat, at 87½ cents per bushel. The contract, according to Bailey's testimony, was made in the following manner: Johnston asked Bailey: "What is Lonsdale's price for wheat this morning?" Bailey named the price, and Johnston said :"Book me for five"; Bailey said; "All right." He further testified that this was all that was said, but that both he and Johnston understood all about the conditions under which the deal was to be consummated. He thereupon wired the Lonsdale Company of the purchase, and the Lonsdale Company immediately wired confirmation of same to Bailey and mailed written confirmation to Johnston. Johnston accepted the terms of the written confirmation and duly signed the same. The wheat was to have been delivered during the period between August 10th and 31st, 1917; during this period, however, the railroad company had declared an embargo upon wheat shipments, and Johnston was thereby prevented from making delivery within the prescribed period; that is, of wheat purchased within the period.

It appears, however, that Johnston started some other shipments in transit to New Orleans, prior to the embargo and prior to August 10th, which shipments he offered to turn to the Lonsdale Company upon his contract or in fulfillment thereof, but which the Lonsdale Company declined to receive, because the wheat had been purchased and shipments placed in transit prior to August 10th.

After the expiration of the period mentioned in the contract, that is, after August 31st, the Lonsdale Company offered to extend the time for the completion of the contract. Johnston refused to accept the extension and refused to make any further shipments, claiming that the Lonsdale Company had breached the contract during the period between August 10th and 31st, by refusing to accept the aforesaid shipments which he had tendered them and by notifying him that they were overloaded with wheat, that they wanted no more wheat, and that they would not honor his drafts for any further shipments.

So, on September 22nd the Lonsdale Grain Company went upon the market and bought a quantity of wheat, for which they paid at that time $1.12½ per bushel, the embargo having been removed and the price of wheat having advanced in the meantime, and charged Johnston with the difference between $0.87½ per bushel and $1.12½ on

5,000 bushels. This, Johnston refused to pay, and the Lonsdale Grain Company brought suit to recover.

The trial resulted in a verdict for defendant, Johnston, and the Lonsdale Grain Company appealed to this court.

The plaintiff's petition stated two causes of action; the first for the damages above referred to, and the second for the sum of $475 claimed by plaintiff to have been paid by it on a former contract. However, plaintiff confessed in its pleadings that defendant was entitled to a credit of $508.58 on a former contract, which under the pleading would have entitled defendant to $35.58 in the second cause of action, which plaintiff asked to be applied on the judgment for which it prayed in the first cause of action, and, as the jury returned a general verdict for defendant, there is no controversy here over the result as to the second cause of action. Hence, the material point in the controversy now is, who breached the contract? and this it is claimed, depends upon whether the contract was governed by the rules of the Oklahoma Grain Dealers' Association or by those of the Kansas City Board of Trade. Plaintiff claims that the contract was made subject to the rules of the Kansas City Board of Trade, and defendant, that it was made in Enid, Oklahoma, and therefore subject to the rules of the Oklahoma Grain Dealers' Association.

The written confirmation, containing the terms and conditions not mentioned in the conversation or agreement between Johnston and Bailey, is as follows:

"Confirmation of Purchase.
"W. B. Johnston,                Kansas City, Mo.
"Enid, Okla.                    July 24, 1914.

"This will confirm purchase from you today through J. R. Bailey of 5,000 bus. of No. 2 wheat at 87½ per bu. F. O. B. New Orleans, New Orleans unloading weights and grades, August after 10th shipment, lower grades at_____ Shipment via_____ Remarks_____

"Please bill as follows:
"To order of Yourself.
"At New Orleans for export.
"Notify us c/o Stuyvesant Docks.
"Lonsdale Grain Co. per W. T.
"Accepted W. B. Johnston."

On the back or margin of said confirmation are the following notes, which are made a part of the contract:

"1. Margin rule, copy on back of this sheet is hereby made a part of this contract.

"2. It is understood and made part of this contract that we will handle any cars billed other than to ourselves as promptly as possible but we will not be responsible for damages or other loss by reason of such billing.

"3. All trades are subject to the rules and regulations of the exchange on which they are executed.

"4. Make all bills of lading shippers' order and endorse them.

"5. Draw on us without exchange, leaving reasonable margin to guarantee weights and grades.

"6. Unless we are given wire objection immediately upon your receipt of this contract, same shall be considered final."

It will be observed that the foregoing contract does not specify the grain association by which it is governed. Note 3 says:

"All trades are subject to the rules and regulations of the exchange on which they are executed"

—without specifying the exchange on which it was executed, nor does the conversation between Bailey and Johnston disclose what exchange or board of trade or grain dealers' association the rules and customs of which should govern in the premises.

Hence, there is nothing either in the conversation between Bailey and Johnston to indicate what grain association the contract was to be governed by, or in the written confirmation accepted by Johnston. But it is to be observed that Bailey said everything was understood; that is, the rules and conditions under which the shipment was to be made and the place of delivery. There is but one condition made in the written instrument which does not appear from the testimony to have been understood in the contract between Bailey and Johnston, viz., that the wheat was to be shipped, delivered after August 10th and prior to August 31st. Bailey testified also that: "The custom is that the Oklahoma rules apply absolutely on all contracts that are made within the state of Oklahoma; that is the custom among grain dealers." Johnston testified to the same thing, and Drennan testified to substantially the same thing; therefore, under the testimony, the contract was an Oklahoma contract.

But, as we view the case, the difference between the rules of the Kansas City Board of Trade and those of the Oklahoma Grain Dealers' Association are not essential to a decision in this case. For it is observed that neither the written contract nor the verbal agreement between Bailey and Johnston specified that grain started in transit to New Orleans prior to August 10th would

not be accepted, if the delivery was tendered after August 10th; therefore, when the embargo was placed upon wheat shipments and Johnston, being unable to get cars for the shipment after August 10th, therefore tendered shipments started in transit prior to August 10th, but to be delivered in New Orleans after August 10th, and the Lonsdale Company refused to accept such shipments and notified Johnston that they were overloaded with wheat and wanted no more shipments and would not honor his draft, then, under such circumstances, Johnston was justified in assuming that the Lonsdale Grain Company had chosen to rescind the contract and had breached and rescinded the same. This being true, he should not have been required to go upon the market and pay the extra price, the difference between $0.87½ and $1.12½, when the Lonsdale Company had refused to accept the same grade of wheat within the period of the contract, simply because it had been purchased by Johnston and started in transit to New Orleans a few days prior to August 10th.

As we view the circumstances, if some other dealer had purchased this same wheat and started it in transit prior to August 10th, Johnston would have had a perfect right to purchase such shipment after August 10th and tender the delivery thereof after the 10th in fulfillment of his contract.

So, upon the whole, we are unable to see where any injustice was done by the verdict; to be frank, we believe it to be a correct verdict.

We have examined the instructions, and find that the issues involved were properly submitted to the jury.

It is our conclusion that, under the facts in the case and the instructions of the court, the verdict of the jury was correct. The judgment is, therefore, affirmed.

OWEN, C. J., and RAINEY, PITCHFORD, JOHNSON, HIGGINS, and BAILEY, JJ., concur.